# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 70

*April Term, A.D. 2022*

June 8, 2022

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.                                                          D-22-0002

WENDY S. OWENS, WSB #5-2816,

Respondent.

## ORDER OF PUBLIC CENSURE

[¶ 1]   **This matter** came before the Court upon a Report and Recommendation for Public Censure, filed herein May 23, 2022, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure (Stipulated Discipline).   The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that Respondent Wendy S. Owens should be publicly censured for her conduct.  It is, therefore,

[¶ 2]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3]   **ADJUDGED AND ORDERED** that Wendy S. Owens is hereby publicly censured for her conduct, which is described in the Report and Recommendation for Public Censure. The Wyoming State Bar may issue a press release consistent with the one set out in the Report and Recommendation for Public Censure; and it is further

[¶ 4]   **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Ms. Owens shall reimburse the Wyoming State Bar the amount of $50.00,

representing the costs incurred in handling this matter, as well as pay the administrative fee of $750.00. Ms. Owens shall pay the total amount of $800.00 to the Wyoming State Bar on or before August 1, 2022. If Ms. Owens fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶ 5]   **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶ 6]   **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶ 7]   **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent Wendy S. Owens.

[¶ 8]   **DATED** this 8th day of June, 2022.

BY THE COURT:

/s/

**KATE M. FOX**
**Chief Justice**

## BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY

WYOMING STATE BAR

| | | |
|---|---|---|
| *In the matter of* | ) | IN THE SUPREME COURT STATE OF WYOMING FILED |
| *Wendy S. Owens* | ) | |
| *WSB # 5-2816,* | ) | *WSB No. 2021-084* MAY 2 3 2022 |
| | ) | |
| *Respondent.* | ) | SHAWNA GOETZ, CLERK |

---

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

---

THIS MATTER came before a Review Panel of the Board of Professional Responsibility via video conference call on the 12th day of May 2022, for consideration of the parties' Stipulation for Public Censure pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure. Present on the call were Review Panel members Robert Jarosh, Honorable Jeffrey A. Donnell, and Alisha Rone. Melinda S. McCorkle, Deputy Bar Counsel, appeared on behalf of the Wyoming State Bar. Respondent Wendy S. Owens appeared on her behalf. The Complainant was also present during the video conference call. The Review Panel, having reviewed the Stipulation and supporting Affidavit, hearing statements from Complainant, Respondent, and Deputy Bar Counsel, and being fully advised in the premises, finds, concludes and recommends:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Respondent has been licensed to practice law in Wyoming since 1991. During the relevant time period, Respondent practiced law at Legal Aid of Wyoming ("LAW") in Gillette, Wyoming. Respondent currently practices law in Cañon City, Colorado.

2. In May 2020, LAW entered into a Limited Scope Representation Agreement with Complainant to represent her in matters related to a *Motion for Order to Show Cause* filed against Complainant by her ex-husband [hereinafter "Ex-Husband"]. Respondent was assigned to represent Complainant in this matter.

1

3. A hearing was held on June 3, 2020. Respondent's case note following the hearing states:

> 6/3/2020, Owens, Wendy
> [i](Last edited by Dela Cruz, Deidra Rivera )[/i] hearing - MOSC
> Did not go well. Judge found contempt based on the failure to allow access to the property in storage, not so much the failure to return the property. Said he'll take under advisement what a remedy would be. **Ordered [opposing counsel] to submit a fee affidavit (which I'll object to as [Complainant] obvs can't pay it)**

(emphasis added).

4. On June 15, 2020, LAW sent Complainant a copy of opposing counsel's fee affidavit. Complainant responded: "I got the copy of [opposing counsel's] bills [sic] does this mean I am going to have to try and figure out how to pay and [Ex-Husband] can just keep running it up or what?"

5. Respondent informed Complainant, "It hasn't been approved by the court yet."

6. The *Order on Show Cause Hearing* was entered on November 4, 2020. The Order required Complainant to deliver personal property to Ex-Husband by November 23, 2020. The Order required opposing counsel to prepare a damages statement by December 18, 2020, if all property was not returned. The Order further provided:

> [Complainant] shall file any response/objection to [Ex-Husband's] damages statement within five business days of the filing of the damages statement. Thereafter, the court will make a final determination of the relief to which [Ex-Husband] is entitled.

7. Between December 10 and December 14, 2020, Respondent communicated with opposing counsel and with Complainant regarding the property dispute. On December 11, 2020, opposing counsel informed Respondent that he intended to file an itemized statement with the Court.

2

8.      Opposing counsel filed his *Notice of Submission of Property List and Damage Statement* (hereinafter "*Property List*") on December 15, 2020. The Certificate of Service states that the *Property List* was mailed to Respondent on December 14, 2020.

9.      The date on which the *Property List* was received in the LAW Gillette office was not recorded.

10.     Respondent asserts that the *Property List* had not been received in the office prior to closing on December 24, 2020 for the holidays and asserts that she received the *Property List* on December 30, 2020. By that point, the deadline to respond to the *Property List* had passed.

11.     Respondent did not take remedial measures to correct the situation. Respondent did not request additional time from the Court to respond to the *Property List*, despite Complainant's objection to the itemization, of which Respondent was aware by December 31, 2020.

12.     Respondent told Complainant that she would file an objection to the *Property List* the following week:

> *12/31/2020, Owens, Wendy*
> tcw client
> she is whining about the itemization of stuff and the values. I said we'll try and put together a response, file it next week.

13.     On January 3, 2021, Complainant faxed a property list to Respondent. Respondent reviewed that list on January 4, 2021, noting, "No particularly substantive differences, plus late anyway. Not real sure what she's talking about re the jewelry." Respondent did not follow up with Complainant.

14.     The Court entered its *Second Order on June 3, 2020 Show Cause Hearing* on January 4, 2021, stating:

3

[Ex-Husband] filed his Notice of Submission of Property List and Damage Statement with the court December 15, 2020. The Notice was provided to [Complainant] through her counsel via U.S. Mail on December 14, 2020. **No response or objection was received from [Complainant].**

The court finds [Ex-Husband] should have judgment against [Complainant] in the amount of $9,818.28 to bear statutory interest of 10% per annum from the date of this order.

[Ex-Husband] shall file a final Affidavit of Attorney's Fees by January 15, 2021. **[Complainant] shall file any response/objection thereto within five (5) business days thereafter.**

(emphasis added).

15. Thus, Respondent was aware that opposing counsel would file a request for his fees by January 15, 2021 and was aware of the timeframe for the response.

16. On January 15, 2021, opposing counsel filed his *Affidavit of Attorney's Fees* (hereinafter "*Affidavit*"). The *Affidavit* was placed in the courthouse box and requested $2,153.00 in attorney's fees.

17. On January 19, 2021, Respondent reviewed the *Affidavit*. Respondent's case note states, "Not really much of anything left to do. Will await final order then I think we are done."

18. Respondent's January 19, 2021 case note is directly contrary to Respondent's case note immediately after the June 3, 2020 hearing in which she stated she would object to the attorney's fees since Complainant could not afford to pay the fees.

19. Respondent did not object to the payment of fees.

20. Respondent and LAW did not notify Complainant of the *Affidavit* until February 12, 2020, seven days after the Court entered its *Order Awarding Attorney's Fees*. The Court's *Order* stated:

4

## ORDER AWARDING ATTORNEY'S FEES

This matter came before the court June 3, 2020 for a contempt proceeding. In the Second Order on June 3, 2020 Show Cause Hearing entered January 5, 2021, the court ordered [Ex-Husband] to submit an affidavit of attorney's fees, allowing [Complainant] an opportunity to respond to such within five days.

[Ex-Husband] filed his Affidavit of Attorney's Fees on January 15, 2021. [Complainant] did not respond. The court has reviewed the Affidavit.

The court finds [Ex-Husband] should have judgment against [Complainant] in the amount of $2,153.00 to bear statutory interest of 10% per annum from the date of this order.

21.     On February 18, 2021, Respondent spoke with Complainant regarding the judgments against her.

22.     In response to Complainant's concerns about the judgments entered against her, Respondent informed Complainant that she was judgment proof and that there are no enforceable consequences to Complainant if she does not satisfy the judgments.

23.     Respondent also provided Complainant with a referral to Dakota Plains Legal Services in Pine Ridge, South Dakota, so that Complainant could obtain information about filing bankruptcy to discharge the judgment:

*2/18/2021, Owens, Wendy*
tcw client
explained that she appears to be judgment proof. She says she has no income (note: when she applied, she said she receives SSDI which would be exempt anyway), she says she has no property that could be attached. Mostly she is just mad that I didn't fight more about the property list and the fee affidavit but honestly there wasn't really much of anything to fight about. Gave her referral to Dakota Plains Legal Services so that she can enquire about BK (she wants to file BK mainly to stick it to adv pty).

*2/18/2021, Owens, Wendy*
discuss case w/ DD
Explained that client is judgment proof, she is just upset that she was ordered to pay anything to the ex and to his atty. Explained that I advised the client that she is judgment proof, that she has no income or assets that can be seized, that she cannot be jailed for failing to pay the judgment, that there really are no enforceable

5

consequences to her. Rick seemed satisfied and said he is not going to call the client back.

<u>**Respondent's Violation of Rule 1.2(a)**</u>

24. W.R.Prof.Cond. 1.2(a) provides:

**Rule 1.2. Scope of representation and allocation of authority between client and lawyer.**

(a) Subject to paragraphs (c), (d), and (e), a lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

25. Upon receipt of Ex-Husband's *Property List*, Complainant spoke with Respondent, voicing her objections to items on the list. Respondent stated that she would file an objection the following week. Shortly thereafter, Complainant faxed a list to Respondent identifying the items to which she objected. Respondent did not file an objection or even respond to the *Property List* despite her client's directives.

26. Similarly, Complainant objected to the payment of opposing counsel's attorney fees as early as June 18, 2020. Respondent asserted that she would object to the fees because Complainant could not pay the fees. Respondent did not object to or even respond to the *Affidavit*.

27. Noting that no response or objection was received from Complainant, the District Court entered judgment against Complainant in the amounts requested by Ex-Husband, plus interest of 10% per annum.

28. After receiving notice of both judgments, Complainant contacted Respondent regarding concerns about the judgments. Respondent noted, "Mostly she is just mad that I didn't

6

fight more about the property list and the fee affidavit but honestly there wasn't really much of anything to fight about."

29. Respondent concedes, and the Review Panel finds by clear and convincing evidence, that Respondent's decision not to file objections to the *Property List* or *Affidavit* was contrary to her client's directives and violates Wyo.R.Prof.Cond. Rule 1.2(a).

## Respondent's Violation of Rule 1.3

30. W.R.Prof.Cond. 1.3 provides:

**Rule 1.3. Diligence**

A lawyer shall act with reasonable diligence and promptness in representing a client.

31. On November 4, 2020, the District Court ordered Complainant to "file any response/objection to [Ex-Husband's] damages statement within five business days of the filing of the damages statement."

32. Respondent did not file a response to the *Property List* within the stated deadline.

33. After speaking with Complainant regarding specific objections to the *Property List* and promising to file an objection the following week, Respondent took no action. Respondent did not request an extension of the deadline to object or file an objection.

34. On January 4, 2021, the District Court granted all relief requested in the *Property List*. The District Court ordered Ex-Husband to submit an *Affidavit of Attorney's Fees* by January 15, 2021. The District Court further stated, "[Complainant] shall file any response/objection thereto within five (5) business days thereafter."

35. Respondent did not file a response or objection to the *Affidavit*.

7

36. Respondent concedes, and the Review Panel finds by clear and convincing evidence, that Respondent's failure to file objections to the *Property List* and to the *Affidavit* violate her duty of diligence mandated by Wyo.R.Prof.Cond. Rule 1.3.

## The Appropriate Sanction for Respondent's Misconduct

37. Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii) Whether the lawyer acted intentionally, knowingly, or negligently;

(iii)The actual or potential injury caused by the lawyer's misconduct; and

(iv)The existence of any aggravating or mitigating factors

38. The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

39. ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct and mirrors the language of Rule 15(b)(3)(D), Wyo.R.Disc.Proc.:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

8

40. Respondent's violations of Rule 1.2(a) (Scope of representation and allocation of authority between client and lawyer and Rule 1.3 (Diligence) implicate ABA Standard 4.4, "Lack of Diligence," which provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:

4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client.

4.43 Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

4.44 Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

41. The parties agree, and the Review Panel so finds, that the presumptive sanction for Respondent's violation of Rules 1.2(a) and 1.3 is a public censure.

The Lawyer's Mental State

42. The preamble to the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards") includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious

9

objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

43. The parties agree, and the Review Panel so finds, that Respondent was negligent and did not act with reasonable diligence in representing Complainant, which caused injury or potential injury to Complainant. While two judgments were entered against Complainant, it is likely that most or all of the entered judgments would have been assessed regardless of whether Respondent timely filed responses to the *Property List* or *Affidavit*.

### The Potential or Actual Injury Caused by the Lawyer's Misconduct

44. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

45. The parties agree, and the Review Panel so finds, that Respondent's conduct resulted in potential or actual injury to a client.

### Aggravating and Mitigating Factors

46. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1    *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2    *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

## 9.3 *Mitigation*

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
  (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
  (2) the chemical dependency or mental disability caused the misconduct;
  (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
  (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses

**9.4** *Factors Which Are Neither Aggravating nor Mitigating*
The following factors should not be considered as either aggravating nor mitigating:
- (a) forced or compelled restitution;
- (b) agreeing to the client's demand for certain improper behavior or result;
- (c) withdrawal of complaint against the lawyer;
- (d) resignation prior to completion of disciplinary proceedings;
- (e) complainant's recommendation as to sanction; and
- (f) failure of injured client to complain.

47.    The parties agree, and the Review Panel so finds, substantial experience in the law and vulnerability of the victim are aggravating factors. Mitigating factors include the absence of a prior disciplinary record and absence of a dishonest or selfish motive.

48.    In consideration of Respondent's misconduct, the parties agree, and the Review Panel so finds, that a public censure is the appropriate sanction in this case for the violations of Rules 1.2(a) and 1.3.

49.    If the Court adopts the Review Panel's recommendation and issues an Order of Public Censure in accordance herewith, the parties have agreed to the following press release:

> The Wyoming Supreme Court issued an order of public censure to former Gillette attorney Wendy S. Owens. The public censure stemmed from Owens' lack of diligence in representing a client (Rule 1.3) and failure to abide by her clients' directives (Rule 1.2). First, Owens missed a deadline to file an objection to the opposing party's submission of itemized damages. After missing the deadline but before an Order was entered, Owens informed her client that she would file an objection the following week but did not do so. An Order was entered adopting the requested damages in their entirety bearing statutory interest of 10% per annum. The Order further required opposing counsel to file an Affidavit of Attorney's Fees and required Owens to file a response/objection thereto within five days. Owens did not file an objection or response. Judgment was entered against Owens' client in the amount requested in the Affidavit of Attorney's Fees bearing statutory interest of 10% per annum. In total, judgments of $11,971.20 plus interest were entered against Owens' client, neither of which were objected to by Owens before the entry of the judgments. In response to the client's concerns about the judgments entered against her, Owens informed her client that she is judgment proof and that there are no enforceable consequences to her if she does not satisfy the judgments. Owens also provided her client with a referral to an out-of-state entity providing free legal services so that she could obtain information about filing bankruptcy to discharge the judgment. In approving the stipulation of Owens and Deputy Bar Counsel for a public censure as the appropriate sanction for Owens' misconduct, the Court

12

ordered Owens to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.

## Recommendation

In consideration of the foregoing findings of fact and conclusions of law, the Review Panel recommends as follows:

1.    That Respondent receive a public censure for violations of Rule 1.2(a) and 1.3, W.R.Prof.Cond.

2.    That, upon issuance of the order of suspension, the foregoing press release may be issued.

3.    That Respondent be required to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar within 10 days of such order.

Dated this 23rd day of May, 2022.

Robert C. Jarosh, Chair
Review Panel of the Board of Professional Responsibility
Wyoming State Bar

13